FILED
2023 Jul-10  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13799

_____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff-Appellant,

*versus*

EBERSPAECHER NORTH AMERICA INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:21-mc-00891-RDP

_____

Before WILSON, BRANCH, and LAGOA, Circuit Judges.

BRANCH, Circuit Judge:

This appeal involves the limitations on the Equal Employment Opportunity Commission's ("EEOC") investigatory powers. It arises from a district court order enforcing only part of an administrative subpoena issued by the EEOC against Eberspaecher North America ("ENA"), a company that manufactures car components with its headquarters in Novi, Michigan and six other locations across the country.

An employee at one of these locations—ENA's Northport, Alabama plant—complained to the EEOC that he was fired for taking protected absences under the Family Medical Leave Act ("FMLA"). An EEOC Commissioner charged ENA with discrimination under the Americans with Disabilities Act Amendments Act ("ADAAA"),[1] listing only the Northport facility in the written charge.[2] The EEOC then issued requests for information on every employee terminated for attendance-related infractions at each of ENA's seven domestic facilities around the nation. When ENA objected to the scope of those requests, the

---

[1] Enacted in 2008, the ADAAA is an amended version of the 1990 Americans with Disabilities Act ("ADA").

[2] While the EEOC never charged ENA with a violation of the FMLA, the EEOC's theory is that ENA discriminated against the employee in violation of the ADAAA by firing him for taking FMLA–protected leave which, the EEOC asserts, is a "reasonable accommodation" required under the ADAAA.

EEOC issued a subpoena and eventually sought judicial enforcement in federal district court.

The district court ordered ENA to turn over information related to the Northport, Alabama facility, but refused to enforce the subpoena as to information from other facilities, holding that nationwide information was not relevant to the EEOC's charge to the Northport facility. The EEOC appeals, arguing that the district court abused its discretion in concluding that the charge related only to Northport. In the alternative, the EEOC contends that, even if the charge were limited to the Northport facility, nationwide data is still relevant to its investigation.

As we outline below, the EEOC's investigatory process is a multistep process designed to notify employers of investigations into potentially unlawful employment practices. First, an aggrieved employee, or the EEOC acting on behalf of an aggrieved employee, can issue a charge against an employer. This charge serves as notice that the EEOC is investigating the potentially unlawful employment practices specified in the charge, and it provides the employer the opportunity to comply with the investigation and rectify the targeted practices. However, if the employer does not voluntarily comply with the investigation, the EEOC can then subpoena the charged employer for information—but only for information relevant to the investigation of the issue set forth in the charge.

After careful review, and with the benefit of oral argument, we hold that the EEOC charged only ENA's Northport facility—

which provided notice to ENA that the EEOC was investigating potentially unlawful employment practices only at that specific facility—and thus that the nationwide data sought by the EEOC is irrelevant to that charge. Accordingly, we affirm the district court's order enforcing only part of the EEOC's subpoena.

## I.     Background

ENA, headquartered in Novi, Michigan, manufactures car components including heaters, A/C units, and service diagnostic tools at seven facilities in four U.S. states. In 2017, a former ENA employee at ENA's Northport, Alabama facility, Joseph White, filed a charge with the EEOC alleging that ENA violated the ADA by firing him from his job following a series of disability-related absences.[3] White alleged that ENA used "a point system to discipline employees for absences and tardiness," including for absences protected under the FMLA. According to ENA's employee handbook, employees receive two points for unscheduled absences, and ten points within a 12-month period result in termination. Per the handbook, ENA is not supposed to assign points for excused absences, including FMLA absences, but it allegedly did so in White's case.

The EEOC investigated White's complaint and, purportedly based on a review of the "employer's practices and the employee

---

[3] While White's original charge alleged discrimination under the ADA, the Commissioner ultimately charged ENA with violations of the ADAAA.

handbook," concluded that ENA in Northport, Alabama was employing the same allegedly discriminatory practice with other employees—assigning points and firing employees for FMLA-protected absences.  As a result, the EEOC charged ENA with unlawful employment practices under the ADAAA.

### (a) The Charge

In July 2019, an EEOC Commissioner filed a charge stating: "I charge the following employer with unlawful employment practices.  Eberspaecher North America, Inc. *6801 B 5th Street Northport, AL 35476.*"  "[T]he above-named employer . . . has violated . . . and continues to violate the [ADAAA] by discriminating against employees on the basis of disability with respect to qualified leave."  It then listed the alleged unlawful discriminatory practices such as "[f]ailing to properly categorize qualified absences protected under the ADAAA" and "[u]nlawful discipline and termination, and the improper assessment of occurrence points wherein an employee's absence is directly correlated to their disability."  The charge specified that the allegations were based on a review of the "employer's practices and the employee handbook," and that "[t]he aggrieved individuals include all employees who have, have been, or might in the future be adversely affected by the" allegedly unlawful practices.

Several days later, the EEOC's Mobile, Alabama office sent ENA's Northport facility a notice of the charge.  The notice informed ENA that "[t]he circumstances of the alleged discrimination are based on Retaliation and Disability, and involve

issues of Discipline, Reasonable Accommodation, and Discharge that are alleged to have occurred on or about Jan 01, 2017 through Aug 02, 2019." The notice did not suggest that the charge or investigation were of a nationwide scope.

### (b) Requests for Information

The Commission also made its first request for information to ENA's Northport facility around that time. Similar to the notice, the initial request for information was directed specifically to the Northport, Alabama facility and did not mention nationwide allegations or a nationwide investigation. Instead, the EEOC requested information solely related to "the allegations of the charge." ENA responded with a position statement and produced its companywide attendance policy.

The EEOC followed up and for the first time asked for nationwide data, which it claimed was "relevant to the instant charge of discrimination." The Commission asked ENA to "[l]ist each employee discharged from Respondent's locations nationwide for the period from January 1, 2018 to the present, for attendance infractions" along with substantial accompanying documentation (*e.g.*, information about the employee, the separation notice, the person who recommended discharging the employee, the person who made the final decision on discharge and so forth.). Notably, it did not request information about whether the discharged employees were disabled or otherwise unable to work for medical reasons.

ENA refused to provide the nationwide information, responding that "the underlying Charge [was] specific to the Northport, Alabama facility." ENA and the EEOC went back and forth for months, with the EEOC pressing ENA for nationwide information about employees it terminated under the attendance policy. ENA resisted for several reasons pointing to the charge being specific to the Northport facility, the large burden of production for nationwide data, and the overbreadth of the Commission's nationwide requests given that the charge was based on allegations from a single employee.

### (c) Subpoena

In August 2020, the EEOC issued the subpoena in question, sending it to ENA's CEO at the corporate headquarters in Novi, Michigan. The subpoena required ENA to produce and turn over nationwide information about employees that it terminated for attendance infractions at any of ENA's locations. ENA petitioned to revoke the subpoena, which the EEOC rejected as untimely. The EEOC then filed an application for judicial enforcement of the subpoena with the district court.[4]

---

[4] At oral argument, the EEOC asserted that it had the authority to reissue a new nationwide charge, but, as a "practical matter" it would have involved "too many administrative hurdles." Oral Argument at 4:15, *E.E.O.C. v. Eberspaecher N. Am., Inc.*, No-13799 (11th Cir. Aug 10, 2022), https://www.ca11.uscourts.gov/oral-argument-recordings?title=&field_oar_case_name_value=eberspaecher&field_oral_ar

### (d) District Court Enforcement

In its application for a show cause order from the district court to enforce the administrative subpoena, the EEOC framed its investigation as an "investigation of a charge of nationwide unlawful employment practices." The EEOC claimed the subpoena should be enforced because the charge was a nationwide charge; it did "*not* pertain to a single location." Accordingly, the EEOC argued, among other things, that: (1) the requested information fell within the broad construction courts give to "relevance" in an EEOC subpoena enforcement action; (2) the nationwide information would help it assess whether ENA "failed to reasonably accommodate . . . disabled employees" under its attendance policy; and (3) if the EEOC concluded that ENA violated the ADAAA, the requested information would help it "identify specific victims of that unlawful employment practice." ENA countered by arguing that the subpoena was too burdensome, indefinite, and had an "illegitimate purpose" in that the EEOC sought a "broadened investigation" outside the scope of the charge, and that, in any event, the subpoena should be limited to the Northport facility based on the plain terms of the EEOC's charge.

The district court ordered ENA to comply with the subpoena "but only as it applies to [ENA's] Northport facility."

---

gument_date_value%5Bvalue%5D%5Byear%5D=&field_oral_argument_date_value%5Bvalue%5D%5Bmonth%5D=.

Citing the charge's exclusive reference to the Northport facility's address, the district court found that only records that pertain to the attendance policy at the Northport facility were relevant to the charge. Reasoning that in order to bring a nationwide charge "the Commissioner must . . . stat[e] her intent within the four corners of the charge," the court held that "[t]he Commissioner herself limited the scope of her charge to the Northport facility." The EEOC timely appealed.

## II.   Standard of Review

We review the district court's decision to enforce an EEOC subpoena for an abuse of discretion.[5]  *McLane Co., Inc. v. E.E.O.C.*, 137 S. Ct. 1159, 1168 n.3, 1170 (2017). "A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *Sec. & Exch. Comm'n v. Marin*, 982 F.3d 1341, 1352 (11th Cir. 2020) (quotation omitted). "The relevance of documents in an administrative proceeding is a mixed question of law and fact, which implies that our standard of review

---

[5] Citing authority from other circuits, the EEOC and the dissent both argue that the district court's interpretation of the charge is a question of law that is entitled to de novo review. But the Supreme Court has made it clear that even though "[w]hether a charge is valid . . . is a pure question of law," "pure questions of law embedded in a district court's decision to enforce or quash a subpoena" are nonetheless subject to a "unitary abuse-of-discretion standard." *McLane*, 137 S. Ct. at 1168 n.3 (quotations omitted).

of such determinations should look either to legal error or to clear error, depending on the circumstances." *E.E.O.C. v. Royal Caribbean Cruises, Ltd.*, 771 F.3d 757, 760 (11th Cir. 2014).

## III.   Discussion

The EEOC argues that the charge was directed at ENA's facilities nationwide or, alternatively, that nationwide data is relevant to the EEOC's investigation even if the charge is directed only at the Northport facility.  As explained below, we disagree on both counts.

With its enactment of Title VII of the Civil Rights Act of 1964, Congress established the EEOC and charged it with responsibility for investigating potential unlawful employment practices, as defined by Title VII.  42 U.S.C §§ 2000e-4, 2000e-5.

The ADAAA prohibits covered employers, such as ENA, from "discriminat[ing] against a qualified individual on the basis of disability" in the "discharge of employees."  42 U.S.C. § 12112(a). ADAAA-prohibited discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ."[6] *Id.* § 12112(b)(5)(A).

---

[6] The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following . . . (D) [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

Congress gave the EEOC a role in enforcing the ADAAA's workplace protections, incorporating, "[t]he powers, remedies, and procedures" of Title VII into the ADAAA. 42 U.S.C. § 12117(a) (incorporating, as relevant here, 42 U.S.C. §§ 2000e-5, 2000e-8, and 2000e-9, including the multistep charging and investigatory procedure used by the EEOC in this case). *See generally*, *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 285–86 (2002).

The EEOC's enforcement procedure begins with the filing of an administrative "charge" alleging discrimination, which may be filed by or on behalf of an individual, or by a member of the EEOC. 42 U.S.C.§ 2000e-5(b). The charge must include, among other things, "[t]he full name and contact information of the person against whom the charge is made, if known," and a "clear and concise statement of the facts . . . constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(2)–(3). This naming requirement is important, as it "serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply

---

29 U.S.C. § 2612(a). While "the FMLA protects the substantive rights it creates by prohibiting an employer from retailing against its employee," *Baston v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018), neither White's original charge nor the Commissioner's charge alleged a violation of the FMLA. Instead, the EEOC argues that ENA violated the ADAAA by firing White for taking FMLA leave, which they argue was a reasonable accommodation for White's disability under the ADAAA.

with the requirements of Title VII." *Virgo v. Rivera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358 (11th Cir. 1994).

After receiving a charge either from an aggrieved employee or a Commissioner, the EEOC must "serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on [the] employer" and "shall make an investigation thereof" to determine whether "there is reasonable cause to believe that the charge is true." 42 U.S.C. § 2000e-5(b). While no statutory provision or regulation requires any specific language in making a "nationwide" charge, the EEOC knows how to issue broad charges targeting numerous employment locations when it suspects nationwide employment misconduct and seeks to collect relevant evidence from several employment locations. *See EEOC v. Bass Pro Outdoor World L.L.C.*, 826 F.3d 791, 798 (5th Cir. 2016) (Fifth Circuit noting that an EEOC charge explicitly identified its target as "retail stores and facilities nationwide"); *EEOC v. Superior Servs., Inc.*, 56 F.3d 441, 443 (2d Cir. 1995) (Second Circuit noting that an EEOC charge explicitly identified its target as "all . . . facilities in New York").

"In connection with any investigation of a charge," the EEOC "shall at all reasonable times have access to . . . any evidence" that "relates to unlawful employment practices covered by [the ADAAA] and is *relevant to the charge under investigation.*" *Id.* § 2000e-8(a) (emphasis added). As we have noted, "[t]he relevance that is necessary to support a subpoena for the investigation of an individual charge is relevance to the contested

issues that must be decided to resolve that charge, not relevance to issues that may be contested when and if future charges are brought by others." *Royal Caribbean*, 771 F.3d at 761.

If an employer refuses to provide the EEOC with information the agency seeks as part of an investigation, the EEOC may issue an administrative subpoena.  42 U.S.C. § 2000e-9; 29 U.S.C. § 161(1); *see also McLane*, 137 S. Ct. at 1167 (explaining that "Title VII confers on the EEOC the . . . authority to issue subpoenas").  Importantly, the subpoena must "describe with sufficient particularity the evidence whose production is required" and the EEOC shall revoke the subpoena after a petition if "the evidence whose production is required does not relate to any matter under investigation."  29 U.S.C. § 161(1).  If the employer does not comply with the subpoena, the EEOC may seek enforcement in federal district court.  42 U.S.C. § 2000e-9; 29 U.S.C. § 161(2).

If the charge is valid[7] and the material requested relevant, the district court should enforce the subpoena unless the employer

---

[7] A charge is considered "valid" if it is "in writing under oath or affirmation and [] contain[s] such information and [is] in such form as the Commission requires."  42 U.S.C. 2000e-5(b); *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 67 (1984).  In adherence with the statute, the EEOC has promulgated regulations that articulate what each charge should contain.  *See* 29 C.F.R. § 1601.12(a) (requiring that each charge contain, "(1) [t]he full name and contact information of the person making the charge . . . , (2) [t]he full name and contact information of the person against whom the charge is made, if known

establishes that the subpoena is "too indefinite," has been issued for an "illegitimate purpose," or is unduly burdensome. *McLane*, 137 S. Ct. at 1165 (*quoting E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 72 n.26 (1984)); *see also E.E.O.C. v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996). At bottom, this case involves the threshold inquiry: whether the "material requested is relevant" to the charged misconduct. Because we decide this case at the threshold relevance inquiry, we need not consider whether the subpoena was "unduly burdensome," "too indefinite," or issued for an "illegitimate purpose."

With these principles in mind, we consider whether the district court abused its discretion in enforcing the subpoena only as to ENA's Northport facility. The EEOC makes two arguments on appeal. First, it contends that it did, in fact, charge nationwide conduct, such that the nationwide subpoena was valid and relevant to the charge. Second, in the alternative, the EEOC argues that nationwide data is still relevant to a charge solely against the

---

. . . , (3) [a] clear and concise statement of the facts . . . constituting the alleged unlawful employment practices . . . , (4) [i]f known, the approximate number of employees of the respondent employer . . . , [and] (5) [a] statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charge with the enforcement of fair employment practice laws . . .").

Northport facility. For the reasons discussed below, both
arguments fail.

### (a) Whether the charge is directed only at ENA's Northport facility

We turn first to the EEOC's argument that it charged
nationwide conduct. The EEOC's regulations require a charge to
include, among other things, "[t]he full name and contact
information of the person against whom the charge is made, if
known." *See* 29 C.F.R. § 1601.12(a). Because only named parties
that are notified of the allegations have a chance to "participate in
conciliation and voluntarily comply," *Virgo*, 30 F.3d at 1358,
whether the EEOC charged ENA's facilities nationwide or only the
Northport, Alabama facility is an important question—and one
that turns on the information the EEOC included in the charge.

The only employer listed in the charge is ENA's Northport
facility, and the charge cannot be fairly read to target companywide
misconduct. Specifically, the Commissioner's charge stated: "I
charge the following employer with unlawful employment
practices. Eberspa[e]cher North America, Inc. *6801 B 5th Street
Northport, AL 35476.*" (Emphasis added). And as the district court
properly noted, the EEOC knows how to charge an employer with
nationwide misconduct, as it has done so before. *See, e.g., Bass Pro
Outdoor World, L.L.C.*, 826 F.3d at 798 (remarking that the
Commissioner's charge explicitly included the language
"at . . . retail stores and facilities nationwide"). The employer
charged in this case, therefore, is plainly only ENA's Northport

facility, and the district court did not abuse its discretion in concluding otherwise.[8]

We are unpersuaded by the EEOC's attempts to overcome the conclusion that it charged only the Northport facility. First, the Commission explains that the charge listed ENA's Northport facility (rather than the corporate headquarters) because the Birmingham office of the EEOC brought the alleged violations to the Commissioner and, therefore, that office was tasked with investigating the charge. But the involvement of the Birmingham office underscores that the allegedly discriminatory conduct at issue occurred at ENA's Northport facility, strengthening our conclusion that the charge targeted only the Alabama plant.

Second, the EEOC argues that other parts of the charge establish that the charge was directed at ENA's companywide practices. For example, the charge was based on a review of the employee handbook, which governs ENA's facilities companywide. And the charge describes "the aggrieved individuals" as "*all* employees" impacted by the allegedly unlawful practices. (Emphasis added.)

The problem with the EEOC's arguments about the handbook and broad definition of aggrieved employees is that they presuppose that the charge targets ENA facilities nationwide. To

---

[8] The dissent points out that the EEOC has the authority to amend a charge "to cure technical defects or omissions." However, as we noted above, the EEOC never tried to amend the charge, so this issue is not before the Court.

wit: the mention of the employee handbook in the charge comes in a sentence reading "[t]hese allegations are based upon a review of information regarding *the employer*, including *the employer's practices* and the employee handbook." (Emphasis added.) That sentence does not suggest, let alone notify ENA, that the unlawful practices identified in the charge were allegedly occurring at all of ENA's facilities. As discussed above, the only "employer" mentioned in the charge is the ENA Northport facility. And stating that the EEOC also reviewed "the employee handbook" did not provide ENA with notice that the charge was alleging companywide unlawful practices.

The EEOC's argument about the definition of "aggrieved individuals" including "all employees" is similarly flawed. As the charge itself explicitly notes, "aggrieved individuals" includes "all employees" who have been adversely affected by the "*unlawful employment practices set forth in the foregoing charge.*" (Emphasis added.) Whether the "foregoing charge" is nationwide or Northport-centric, therefore, controls whether "all employees" means all ENA employees across the country or just the Northport ones. And as discussed above, the charge is best read as directed only at the Northport facility.

Third, the EEOC asserts that it was not required to identify ENA's address, if unknown, and therefore the inclusion of the

Northport address is irrelevant.  But here, the EEOC did include an address—the address for the Northport facility.[9]

Accordingly, the district court did not abuse its discretion in holding that EEOC charged only ENA's Northport facility.

### (b) Whether companywide data is relevant to a charge specific to the Northport location

We turn next to the EEOC's relevance argument.  The EEOC subpoenaed information on every attendance-related termination at all ENA facilities, irrespective of the terminated employees' disability status or potential entitlement to FMLA leave.  Below, and on appeal, the EEOC contends that, even if the charge is directed solely at the Northport facility, the nationwide data is still relevant to the charge, given the expansive definition of relevance in the Supreme Court's decisions and the fact that ENA's attendance policy "appears" to apply to all its United States facilities.  It claims that nationwide information would "allow the EEOC to identify any individuals ENA discharged following

---

[9] The dissent claims that the EEOC "[l]isting the facility address [on the charge] merely provides contact information, nothing more."  But, again, the regulation calls for "[t]he full name and contact information of the person against whom the charge was made, if known."  29 C.F.R. § 1601.12(a)(2).  If the EEOC intended to charge ENA nationwide, it could have included the contact information for other facilities or ENA's headquarters in Novi, Michigan.

disability-related absences."  We disagree that the information is relevant to the charge against the Northport facility.[10]

---

[10] On appeal, for the first time, the EEOC asserts that nationwide information is relevant to a Northport-specific charge because it will provide comparative data to help the EEOC determine whether the alleged discrimination is a result of specific managers or a broader policy and, based on that determination, fashion appropriate relief.  The EEOC further asserts that comparing data related to all employees discharged for attendance infractions, from all of ENA's facilities, would help the EEOC determine whether ENA's Northport facility improperly characterizes disability-related absences as "attendance occurrences."  But the EEOC failed to raise these arguments below and, therefore, the EEOC has waived these arguments on appeal.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331–32 (11th Cir. 2004) (collecting cases for the proposition that, generally, arguments raised for the first time on appeal will not be considered by this Court); *see also E.E.O.C. v. TriCore Reference Labs.*, 849 F.3d 929, 942 (10th Cir. 2017) ("The problem for the EEOC is that it did not present these relevance arguments in district court.  It has thus failed to meet its burden of explaining how [its] request would offer information relevant to [the] charge.").

Even if we were to consider it, the EEOC's argument here is unconvincing.  Specifically, the EEOC argues that "several" of our sister circuits have "reversed district courts that declined to enforce EEOC administrative subpoenas seeking information beyond the facility where the charge allegations arose, where the charge's allegations implicated a companywide policy."  In support, the EEOC cites to cases from three of our sister circuits, appearing to allude that a decision to the contrary would create a circuit split.  We first note that because the question of whether requested information is relevant to an underlying EEOC charge is a fact-specific inquiry, we are not creating a circuit split.

Regardless, each of these cases are distinguishable.  First, the EEOC cites to *E.E.O.C. v. Kronos Inc.*, 620 F.3d 287 (3d Cir. 2010), where the Third

The relevance of the material requested is linked to the scope of the Commission's charge against the employer. *See* 42 U.S.C. § 2000e-8(a) ("In connection with any investigation of a charge," the EEOC "shall at all reasonable times have access to . . . any evidence" that "relates to unlawful employment practices covered by [the ADAAA] and is *relevant to the charge under investigation.*" (emphasis added)). Unlike other federal

---

Circuit held that a subpoena requesting nationwide information was relevant. *Id.* at 300. But *Kronos* is distinguishable, as the EEOC there had previously issued a notice expanding the charge to include "all facilities in the United States and its territories." *Id.* at 293. In contrast, the EEOC here issued a single charge that specifically identified ENA's Northport facility but never expanded the charge to include any other ENA facilities.

Next, the EEOC cites to *E.E.O.C. v. Randstad*, 685 F.3d 433 (4th Cir. 2012), where the Fourth Circuit held that a subpoena requesting statewide information was relevant. *Id.* at 450. But *Randstad* is also distinguishable, as the EEOC there originally sought nationwide information but voluntarily "narrowed the geographic scope" of the subpoena to a single state after the employer objected to the "nationwide scope of the subpoena." *Id.* at 437–39. In contrast, the EEOC here is seeking nationwide information and has not indicated any plans to voluntarily cut the scope of its subpoena.

Finally, the EEOC cites to *E.E.O.C. v. United Parcel Service, Inc.*, 587 F.3d 136 (2d Cir. 2009), where the Second Circuit held that a subpoena seeking nationwide information was relevant. *Id.* at 140. But *United Parcel Service* is distinguishable as well, as the employee there who submitted the charge alleged that the company had a "pattern or a practice" of unlawful employment actions, which applied nationwide to all company facilities. *Id.* at 137–38. In contrast, and as discussed above, *supra*, the EEOC's charge here did not suggest that unlawful employment practices were occurring anywhere but ENA's Northport facility.

agencies with "plenary authority to demand records" relevant to their jurisdiction, "the EEOC's investigative authority is tied to charges filed with the Commission." *Shell Oil*, 466 U.S. at 64. The EEOC is therefore entitled "only to evidence 'relevant to the charge under investigation'" and may not exercise "unconstrained investigative authority." *Id.* at 64–65 (citing 42 U.S.C. § 2000e-8(a)). The Supreme Court has broadly construed the term "relevant" to mean "virtually any material that might cast light on the allegations against the employer." *Id.* at 68–69. But it also cautioned against so "generously constru[ing] the term 'relevant,'" as to render the statutory relevancy requirement "a nullity." *Id.*

"The decision whether evidence sought is relevant requires the district court to evaluate the relationship between the particular materials sought and the particular matter under investigation—an analysis variable in relation to the nature, purposes and scope of the inquiry." *McLane*, 137 S. Ct. at 1167–68 (quotation omitted). The relevance inquiry is "generally not amenable to broad *per se* rules" but is the "kind of fact-intensive, close call[] better suited to resolution by the district court than the court of appeals." *Id.* at 1168 (quotation omitted).

As discussed above, the EEOC issued a charge against a single facility, based on the complaint of a single employee, about a specific kind of attendance-related discrimination: penalizing employees for taking FMLA-protected absences. Yet the EEOC requested information from every ENA facility in the country on all attendance-related terminations regardless of the terminated-

22              Opinion of the Court              21-13799

employees' disability-status or entitlement to FMLA leave. Why ENA fired other employees at other facilities for any attendance-related reason is simply not relevant to whether the Northport facility engaged in ADAAA discrimination in administering its attendance policy. Holding that such an incredibly broad subpoena for such information was "relevant" to the charge against ENA's Northport facility would construe that term so broadly as to render it a "nullity." *See Shell Oil*, 466 U.S. at 694.

Our decision in *Royal Caribbean Cruises* supports our decision here that the EEOC's demands for nationwide information are not relevant to the charged conduct. In that case, an employee filed a charge[11] with the EEOC against Royal Caribbean, alleging ADA discrimination when it refused to renew his contract after a medical diagnosis. 771 F.3d at 759. The EEOC ultimately issued an administrative subpoena requesting a "[l]ist [of] all employees who were discharged or whose contracts were not renewed [from August 25, 2009, through present] due to a

───────────────

[11] The dissent attempts to distinguish *Royal Caribbean* by noting that the charge there was made by an individual rather than by the Commissioner, as is the case here. But the statute establishing the EEOC's enforcement authority allows for a charge to be filed by either "a person claiming to be aggrieved[] or by a member of the Commission" and does not otherwise distinguish any of the enforcement procedures based on who originally filed the charge. 42 U.S.C. § 2000e-5(b). Further, while the operative charge here was the Commissioner's charge, this investigation began after White, an individual, filed an EEOC charge alleging discriminatory conduct in violation of the ADA, just like the individual in *Royal Caribbean.* 771 F.3d at 759.

medical reason." *Id.* (third alteration in original).  We explained
that the subpoena was improperly "aimed at discovering members
of a potential class of employees or applicants who suffered from a
pattern or practice of discrimination, rather than fleshing out [the
complaining employee's] charge." *Id.* at 760–61.  Rejecting the
EEOC's broad request for information, we held

> The relevance that is necessary to support a subpoena
> for the investigation of an individual charge is
> relevance to the contested issues that must be decided
> to resolve that charge, not relevance to issues that
> may be contested when and if future charges are
> brought by others.

*Id.* at 761.  We also explained that the EEOC's arguments in that
case, much like their arguments on appeal in this case, "amounted
to simply parroting the Supreme Court's statement that [relevant
information was] information [that] 'might cast light on the
allegations' against [Royal Caribbean]." *Id.* at 761 (*quoting Shell
Oil*, 466 U.S. at 69).

The EEOC appears to be litigating this case much like it did
in *Royal Caribbean*.  For one, as mentioned above, the EEOC's
arguments amount, almost exclusively, to pointing to the broad
conception of relevance discussed in *Shell Oil*.  But as we noted in
*Royal Caribbean*, the Supreme Court also cautioned against
reading the relevance requirement so broadly as to render it a
"nullity." *Id.* at 760 (quoting *Shell Oil*, 466 U.S. at 68–69).
Accepting the EEOC's arguments would do just that.

We therefore hold that the EEOC's request for nationwide information was not relevant to its charge against ENA's Northport facility.  When it issued its original charge against ENA's Northport facility, the EEOC put ENA on notice of the alleged discriminatory practices at that one facility and gave ENA an opportunity to comply with the investigation and rectify the targeted practices.   As it targeted the Northport facility, the EEOC's charge did not, however, provide notice of an investigation into ENA's facilities nationwide.  No one disputes that the EEOC could have amended this charge prior to issuing the administrative subpoena to put ENA on notice of a nationwide investigation—but the EEOC did not do so.

Accordingly, the district court did not abuse its discretion by enforcing the EEOC's subpoena of information only as to the Northport facility.  We affirm.

**AFFIRMED.**

21-13799                 WILSON, J., dissenting                 1

WILSON, Circuit Judge, dissenting:

I disagree that this case presents an opportunity to limit an agency's investigatory powers. This subpoena falls well within the Equal Employment Opportunity Commission's (EEOC) investigatory power, and the charge before us raises no compelling reason to disturb the longstanding latitude the Supreme Court has afforded EEOC investigations.[1]

The Supreme Court has clearly explained, "[a] district court's role in an EEOC subpoena enforcement proceeding . . . is a straightforward one." *McLane Co., Inc. v. E.E.O.C.*, 581 U.S. __; 137 S. Ct. 1159, 1165 (2017). "[W]hen a court is asked to enforce a Commission subpoena, its responsibility is to satisfy itself that the charge is valid and that the material requested is relevant to the charge . . . ." *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 191 (1990) (internal quotation marks omitted). The court "should do so cognizant of the 'generous' construction that courts have given the term 'relevant.'" *McLane*, 127 S. Ct. at 1165 (alteration adopted). "If the charge is proper and the material requested is relevant, the

---

[1] The interpretation of an EEOC charge is a question of law that we review de novo. *Cf. Flagship Marine Servs., Inc. v. Belcher Towing Co.*, 966 F.2d 602, 604 (11th Cir. 1992); *see also E.E.O.C. v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 639 F.3d 366, 371 (7th Cir. 2011) ("The interpretation of an EEOC charge presents a question of law that we review de novo . . . ."); *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 n.1 (10th Cir. 2018) ("[T]he interpretation of the scope of an EEOC charge from the face of the charge itself . . . is best viewed as a legal issue reviewed de novo.").

district court should enforce the subpoena unless the employer establishes that the subpoena is 'too indefinite,' has been issued for an 'illegitimate purpose,' or is unduly burdensome." *Id.*

Despite the Supreme Court's generous construction of subpoena validity and relevance, the majority opinion constrains the EEOC's investigation on two grounds: first, by limiting the geographic scope of the charge to the address listed therein, and second, by finding the nationwide information sought irrelevant. I address each argument in turn.

## I.

The majority opinion places undue weight on the facility address listed on the charge, concluding that it alone restricts the geographic scope of the investigation to the Northport Alabama facility. While an EEOC charge must include, among other things, "the full name and contact information of the person against whom the charge is made," the charge is not required to list an address. 29 C.F.R. § 1601.12(a)(2). Instead, a respondent's address must only be included "if known," which suggests that an employer's address is not necessary to complete a valid charge nor is it determinative of a charge's substance. *See id.*

The employer charged with unlawful conduct here is "Eberspacher [sic] North America, Inc." (ENA), not Eberspaecher Northport, Alabama. The charge does not list the Northport facility as the employer, nor does it address the Northport facility as if it were a separate legal entity. The only Northport-specific

language included within the charge is the address associated with the Northport location.  To suggest that the inclusion of this single address limits the charge to this single facility turns a blind eye to basic notions of corporate structure and a plain reading of the charge.  ENA, like many corporations, has multiple locations nationwide and consequently multiple addresses.  ENA is a single legal entity with no parents, subsidiaries, or affiliates.[2]  Despite each facility having a unique address, an address alone does not create a separate "entity" or "employer" as the district court and majority seem to suggest.  Listing the facility address merely provides contact information, nothing more.  *See* 29 C.F.R. § 1601.12(a)(2);  *see also id.* § 1601.12(b) (providing that "[n]otwithstanding the provisions of paragraph (a)" a charge is sufficient if it identifies the parties, and "may be amended to cure technical defects or omissions").

Rather than fixate on the address, a far more natural reading of the charge reveals that the EEOC sought to investigate a pattern-or-practice charge against ENA nationwide.  The charge refers to

---

[2] When asked whether he represents Eberspaecher North America or Eberspaecher Northport, the appellee's attorney replied that he represents "Eberspaecher North America, Inc." because it is "one corporate entity."  Oral Argument at 12:50, *E.E.O.C. v. Eberspaecher N. Am., Inc.*, No-13799 (11th Cir. Aug. 10, 2022), https://www.ca11.uscourts.gov/oral-argument-recordings?title=21-13799&field_oar_case_name_value=&field_oral_argument_date_value%5B value%5D%5Byear%5D=&field_oral_argument_date_value%5Bvalue%5D %5Bmonth%5D=.

ENA's "unlawful discriminatory practices" and directly references
ENA's "practices and the employee handbook" that applies
nationwide.   Further, the charge states that "[t]he aggrieved
individuals include *all* employees who have, have been, or might
in the future be adversely affected by the unlawful employment
practices set forth in the" charge (emphasis added).  As the district
court reasoned, "the commissioner must . . . stat[e] her intent
within the four corners of the charge."  It is plainly clear that
located within the four corners of the charge is the intent to
investigate ENA nationwide.

## II.

Next, the majority contends that the nationwide data sought
by the EEOC is irrelevant to the Commissioner's charge.  Although
the EEOC is limited to accessing relevant information, the
Supreme Court has held "[t]hat limitation on the [EEOC's]
investigative authority is not especially constraining."  *E.E.O.C. v.
Shell Oil Co.*, 466 U.S. 54, 68 (1984).  The term "relevant" has been
construed broadly, and courts "have afforded the [EEOC] access to
virtually any material that might cast light on the allegations
against the employer."  *Id.* at 68–69.  An individual charge[3]  may

---

[3] In general, the charge "process begins with the filing of a charge with the
EEOC alleging that a given employer has engaged in an unlawful employment
practice.  A charge may be filed by an aggrieved individual or by a member of
the Commission."  *Shell Oil*, 466 U.S. at 62.  An EEOC Commissioner may file
a charge herself if she "has reason to think that an employer has engaged in a
'pattern or practice' of discriminatory conduct."  *Id.*

21-13799                WILSON, J., dissenting                5

be limited to investigating the individual employee's claim in that instance.  *E.E.O.C. v. Royal Caribbean Cruises, Ltd.*, 771 F.3d 757, 761–62 (11th Cir. 2014) (per curiam) (finding an individual charge improperly overbroad where it sought to discover a potential class of employees or applicants who suffered from a pattern or practice of discrimination within the company rather than limit the charge to the individual employee's allegation).

The information related to ENA's allegedly unlawful employment practices nationwide is, under any construction of the term, relevant to the EEOC's investigation.  The type and scale of information sought here to investigate an alleged discriminatory pattern and practice spanning multiple facilities nationwide is certainly the type of material "that might cast light on the allegations against the employer."  *Shell Oil*, 466 U.S. at 68–69.  I see no reason to stifle the broad investigatory power clearly laid out by the Supreme Court.  Additionally, our logic in *Royal Caribbean* is inapplicable here.  In *Royal Caribbean*, the only charge at issue was an individual charge investigating an alleged ADA violation by the employer against a single employee.  771 F.3d at 759–60.  The charge here is the *Commissioner's* charge, not Mr. White's individual charge, seeking to discover whether ENA's policy (which applies to all ENA employees nationwide) is discriminatory.  Unlike in *Royal Caribbean*, where the companywide information was irrelevant to an individual charge, the companywide information sought here by the Commissioner is clearly relevant to this companywide investigation.

6                         Wilson, J., dissenting                    21-13799

Furthermore, we have previously contemplated the precise case before us, as we suggested in *Royal Caribbean* that "[t]he Commission has the ability to file a Commissioner's charge alleging a pattern and practice of discrimination that could support a request for [companywide information]." 771 F.3d at 762. As we suggested then, and we should hold now, ENA companywide information is relevant to the allegation of pattern-and-practice discrimination.

Because I would hold that the EEOC satisfied its requirement to create a valid charge seeking relevant information and would therefore reverse the district court, I dissent.